THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD L. FREEMAN, Defendant-Appellant.

Second District   No. 2—87—0286

Opinion filed March 28, 1988.

Paul E. Gaziano, of Rockford, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Ronald Freeman, appeals from his conviction of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1)) for which he was sentenced to two years' probation and 160 hours of public service and directed to participate in a drug treatment program. On appeal, defendant contends that the State presented insufficient evidence to prove him guilty beyond a reasonable doubt and the trial court erroneously found him ineligible to be treated as a drug addict pursuant to the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1985, ch. 111½, par. 6321).

Defendant was initially charged with aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1)) and aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)) for allegedly touching the vaginal area and penetrating with his finger the anal area of a 10-year-old girl.

At trial, Charanna Johnson (Renee) testified that on October 8, 1985, she was asleep in a bed in the hallway outside her mother's bedroom. Renee stated that she awoke feeling thirsty and overheard conversation coming from her mother's bedroom. Renee's mother, Anna Johnson, then passed through the hallway where Renee was sleeping

and went down the stairs in their home. Defendant had remained in the bedroom and was dressing.

As defendant approached Renee's bed, Anna shouted from the stairway, asking the defendant what was taking him so long. Defendant responded that he had tripped over an ashtray and the telephone placed near the bed in Anna's room. Defendant ran into the bedroom from the hallway and jingled the telephone and ashtray. Next, defendant returned to Renee's bed, leaned over her, removed her bed covers, pulled up her nightgown and housecoat, and put his hand inside her panties. Renee did not scream but turned over with her back toward the defendant. According to Renee, defendant then "stuck his hand down there in my bottom" and "put his finger in the crack and pulled it out."

When defendant went downstairs, Renee ran to her mother's bedroom and looked out the window to determine whether defendant had gone. Renee claimed she was too scared to tell her mother while defendant was present. Renee then went downstairs and reported the incident to her mother.

On cross-examination, defendant's attorney pointed out a discrepancy in Renee's recitation. At trial, Renee claimed she awoke due to thirst, while the police officer's report indicates she told him defendant's voice woke her. Renee also reported that she had not seen the defendant before that night.

Anna Johnson testified that she and defendant were in her bedroom from approximately 1 a.m. to 3 a.m. on October 8, 1985. At approximately 3 a.m., Anna left defendant in the bedroom while she went downstairs to use the bathroom. Shortly thereafter, she called upstairs asking defendant what was taking him so long. Defendant replied he was having a hard time finding his clothes; then Anna heard some noise which defendant explained was the telephone and ashtray Anna kept on the floor near her bed. Defendant then came downstairs and kissed her good-bye.

When defendant had left, Anna noticed Renee standing behind her. Renee was stammering and stuttering and asked, "Mom, who was that man?" According to Anna, Renee told her that the defendant had touched her private parts and hurt her.

Anna confirmed that Renee had never met defendant. Additionally, Anna disclosed that Renee's bed had been in its location in the hallway for approximately four months, during which time defendant had a sexual relationship with Anna and visited about once a week. The next day, Anna took Renee to a hospital, but an examination was uneventful, and Anna summoned the police.

The police arranged for Anna to telephone defendant, relating Renee's accusations. The police recorded the telephone conversation, which was admitted into evidence, and a transcript is included in the record on appeal. Pursuant to the conversation, defendant visited Anna's home that morning to discuss further the accusations. The police videotaped the meeting. The State offered and the trial court admitted the videotape into evidence, but it is not included with the record on appeal.

At the close of the State's case, the court granted defendant's motion for a directed verdict, in part, finding defendant not guilty of aggravated sexual assault.

Defendant denied touching Renee for his own sexual satisfaction. Defendant's account revealed that after Anna left the room in the early morning of October 8, 1985, he spent three to five minutes dressing because he could not find his clothes easily in the dark. Once in the doorway separating the bedroom and the hallway, defendant tripped and fell into the hallway, falling on a cot where Renee was sleeping. Defendant proceeded to pick himself up and patted whomever was on the cot to excuse himself. Defendant denied touching the child's sex organs and related that his hands never went under the covers of the bed. Defendant reached back and placed the telephone receiver into its cradle. Anna hollered asking why he took so long, and defendant told her that he had tripped. Defendant then left the home.

Several witnesses testified on defendant's behalf that they had known the defendant for many years as a lawyer and socially and that he had an excellent reputation in the community.

The court found defendant guilty of aggravated criminal sexual abuse. Defendant petitioned to be treated as a drug addict pursuant to the Alcoholism and Substance Abuse Act (Act) (Ill. Rev. Stat. 1985, ch. 111½, par. 6321). The court ordered an evaluation of the defendant by Treatment Alternatives to Street Crimes (TASC), which revealed that while defendant was an addict, he was ineligible for TASC services due to the nature of his "pending charge." The matter proceeded to sentencing where defendant received two years' probation and 160 hours of public service and was directed to participate in a drug treatment program.

▪▪ ▪ Defendant's first contention is that there is reasonable doubt as to his guilt. We disagree.

"It is well settled in Illinois that when a conviction for taking indecent liberties with a child depends upon the testimony of the prosecuting witness, and the defendant denies the charge,

there must be substantial corroboration of the prosecuting witness by some other evidence, fact, or circumstance in the case; or the testimony of the prosecuting witness must be otherwise clear and convincing." (*People v. Powell* (1985), 138 Ill. App. 3d 150, 156.)

In this case, the victim's testimony was clear and convincing. Renee indicated that she would be 11 years old the week after the trial. Renee was able to answer all questions posed to her regarding her family, home, and school. Further, Renee appreciated that she was required to testify truthfully and revealed that no one had influenced her testimony. Additionally, Renee provided details to the court of the occurrence and, according to her mother's testimony, promptly reported the incident to her.

■ Defendant notes that Renee and her mother gave conflicting testimony regarding whether Anna stayed home after Renee reported the incident to her. Defendant also points out that Renee was not terribly upset, as her mother indicated, since Renee's testimony revealed that she was unable to go back to sleep because "usually when I'm wide awake I can't fall asleep right away. I just lay [*sic*] there in bed." The testimony of the complaining witness need not be crystal clear and perfect in order to be clear and convincing. (*Powell*, 138 Ill. App. 3d at 156.) The credibility of the victim, as that of other witnesses, is a question for the trier of fact, and its determination is entitled to great weight. (138 Ill. App. 3d at 156.) A reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains. 138 Ill. App. 3d at 156.

■ Defendant contends that his version of the occurrence was credible. Defendant's testimony was that he had stumbled forward onto the cot and startled the girl so that she believed she was being touched in the manner she described. However, defendant claimed not to have put his hands under the covers but only patted her. Since Renee was wearing panties, a nightgown, and a housecoat under the covers, it is unlikely that she could have been mistaken. The trier of fact need not accept a defendant's exculpatory testimony but may properly consider the surrounding circumstances and the probability or improbability of defendant's story. (*People v. Jones* (1987), 161 Ill. App. 3d 688, 696.) Defendant emphasized the fact that the hallway was dark and that he was unfamiliar with the layout. However, according to Anna's testimony, for four months Renee's bed was in its place in the hallway, and defendant had visited each week during that time. Further, defendant presumably had to pass through the hallway

where Renee slept to enter the bedroom. Under the circumstances, the court did not err in its credibility determination crediting Renee's testimony over defendant's account.

Defendant's final argument is that the trial court improperly found him ineligible to participate in TASC and, instead, sentenced him to two years' probation, 160 hours of public service, and participation in a drug treatment program. We agree.

■ The TASC recommendation revealed that defendant was ineligible for treatment in its program due to the nature of his "pending charge." However, at the time of the evaluation, no charges were *pending* against defendant since the trial court had found him not guilty of aggravated criminal sexual assault and guilty of aggravated criminal sexual abuse. Where defendant's guilt has been adjudicated or defendant has entered a plea of guilty and is merely awaiting sentence, there are no pending felony charges as contemplated within the Act. (*People v. Chaput* (1981), 100 Ill. App. 3d 982, 985.) While TASC's evaluation is included in the record on appeal, there is no record of the trial court's order denying defendant's election to be treated as a drug addict.

Section 21 of the Act provides:

"An addict charged with or convicted of a crime is eligible to elect treatment under the supervision of a licensed program designated by the Department instead of prosecution or probation, as the case may be, unless (a) the crime is a crime of violence ***." (Ill. Rev. Stat. 1985, ch. 111½, par. 6321.)

Therefore, the relevant inquiry is whether the offense of aggravated criminal sexual abuse is a crime of violence. Section 4.7 of the Act defines crimes of violence as the following: "treason, first degree murder, second degree murder, criminal sexual assault, aggravated criminal sexual assault, armed robbery, arson, kidnapping, aggravated battery, and any other felony which involves the use or threat of physical force or violence against another individual." (Ill. Rev. Stat., 1987 Supp., ch. 111½, par. 6304.7.) No cases have decided whether the offense of aggravated criminal sexual abuse is a crime of violence for purposes of the Act.

■ Our interpretation of section 4.7 of the Act is that if a defendant is charged with or convicted of an enumerated offense, he is automatically ineligible to participate in the program. However, if the offense constitutes a felony, yet is not enumerated, the court must consider the nature of the crime to determine whether it involved force or violence. Under certain sections of the Criminal Code of 1961, aggravated criminal sexual abuse constitutes a violent or force-

ful act, *e.g.*, sexual conduct and a dangerous weapon displayed, used, or threatened (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(a)(1)), sexual conduct causing great bodily harm to the victim (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(a)(2)), and sexual conduct between minors of a specified age where the accused employed force or threat of force to commit the act (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(2)). In contrast, the aggravating factor in this case was not forceful or violent conduct but the age of the victim. Therefore, defendant's conviction for aggravated criminal sexual abuse does not render him ineligible.

Nothing in the wording of the offense reveals that aggravated criminal sexual abuse is a crime of violence. Section 12—16(c)(1) of the Criminal Code of 1961 (Code) provides:

"(c) The accused commits aggravated criminal sexual abuse if:

(1) the accused was 17 years of age or over and commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed ***." (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1).)

Sexual conduct is defined in the Code as "any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(e).) The legislature reasonably enumerated aggravated criminal sexual assault as a crime of violence (a Class X offense) while omitting aggravated criminal sexual abuse (a Class 2 offense). The sexual conduct, mere touching in this case, did not amount to violent behavior as contemplated by the Act.

Instructive is the Code's definition of "force or threat of force," which included but did not limit the meaning to the following situations:

"(1) when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believed that the accused had the ability to execute that threat; or

(2) when the accused has overcome the victim by use of superior strength or size, physical restraint or physical confinement." (Ill. Rev. Stat. 1985, ch. 38, pars. 12—12(d)(1), (d)(2).)

In this case, Renee did not testify that defendant threatened her in any way or even spoke to her. Defendant did not restrain Renee, as evidenced by her testimony that she turned over in her bed when he

first touched her. Further, the touching did not cause her physical harm. In sum, the facts of the present case did not amount to a violent crime which would render defendant ineligible to participate in TASC.

█ Inasmuch as we have concluded that defendant was eligible to elect treatment, the trial court must determine whether defendant was an addict within section 21 of the Act. The court never stated on the record its findings in this regard. The final decision as to whether defendant is a proper person for treatment under the Act is for the trial court, whose discretion is not eliminated by the opinions, examinations or evaluations of experts. (*People v. Killion* (1977), 50 Ill. App. 3d 433, 436.) Therefore, defendant's conviction is affirmed, and the cause is remanded for a new sentencing hearing to determine whether defendant was an addict and the appropriateness of allowing him to choose treatment under the Act. See *People v. Braje* (1985), 130 Ill. App. 3d 1054.

Affirmed and remanded.

NASH and HOPF, JJ., concur.