THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM BROCK *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—86—1720

Opinion filed June 9, 1989.

Richard Stopka, of Chicago, for appellant William Brock.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Al Tomaso, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant William Brock appeals from his conviction, after a bench trial, of one count of delivery of a controlled substance. Defendant, along with codefendant Michael Huminsky and other codefendants, was indicted on one count of calculated criminal drug conspiracy and one count of delivery of a controlled substance arising from

events occurring on April 17, 1984 (indictment No. 84—7334). Defendant, along with Huminsky, was also charged with the same two offenses arising from occurrences on April 20, 1984, in a separate indictment (No. 84—7332). Both Brock and Huminsky filed a notice of appeal which this court subsequently severed. This opinion therefore concerns only defendant Brock's appeal.

The following facts are relevant to this appeal. Prior to trial, the State moved to consolidate cases Nos. 84—7332 and 84—7334. Defendant's counsel agreed but informed the court that the cases involved several factual situations which should be kept separate, to which the court asserted that it would have no problem keeping the cases separate. The motion to consolidate was granted at the end of the bench trial.

Testimony was heard from Illinois State Police Special Agents Daniel Callahan and Osborn Curtis. There were no defense witnesses. Agent Callahan testified that, on April 17 while working undercover in a resale shop, he received a telephone call from codefendant Mike Wilson asking if he wanted to purchase 1½ ounces of cocaine for $3,100. Defense counsel objected to Callahan relaying the content of conversations with the other codefendants. The court ruled that it would allow the conversations to establish a conspiracy; if no conspiracy was proved, the testimony would be stricken. Callahan then testified that he, Agent Curtis, and Wilson drove to Michael Huminsky's apartment in Rolling Meadows. In the car, Wilson told the agents that Mike Huminsky would take them to "Judo."

While Agent Curtis remained in the car, Wilson and Agent Callahan entered the apartment and saw Mike Huminsky, his brother Bill Huminsky, and an unidentified woman. Callahan identified the two brothers at trial after being confused initially because they had both changed their hair styles since their arrests. Agent Curtis also identified the Huminsky brothers at trial. Mike Huminsky made a phone call and then informed the others that "Judo" had said the cocaine was not yet ready. Mike Huminsky then demanded to see the money and all three codefendants accompanied Callahan to the car and were shown the money.

Wilson and the agents then went for something to eat, returning to the apartment an hour later. The agents, accompanied by the Huminskys and Wilson, then went to another apartment in Palatine. Wilson and the Huminsky brothers entered the apartment building while the agents remained in the car. Subsequently, Mike Huminsky returned to the car and gave a bag of white powder, later identified as cocaine, to Callahan in exchange for $3,100.

Three days later, on April 20, Mike Huminsky offered to arrange another sale of 1½ ounces of cocaine to Callahan. Approximately the same sequence of events occurred during the second buy, with Callahan and Curtis first going to the Rolling Meadows apartment where Mike Huminsky made a phone call and told Callahan that Judo had said the cocaine was not yet ready. Later, the two agents, accompanied only by Mike Huminsky, went to the same Palatine apartment building they had driven to on April 17. Once there, Curtis stayed in the car while Callahan and Mike Huminsky entered the building and rang a doorbell with the name "Bertagnoli" on it. They were met in the apartment by a man introduced as Judo, whom Callahan identified in court as defendant Brock. Judo, who was armed, searched Callahan and then gave the agent a bag of white powder, later identified as cocaine, in exchange for $3,100. After the transaction, Judo identified himself as William Brock and gave Callahan a business card with that name on it. The agent also observed a scale with white powder on it in the apartment. Later, Callahan marked this second bag of powder with the name of "James Bertagnoli alias Judo."

The trial court denied defendant's motion for a directed verdict, which was based on the ground that the cocaine was received from Bertagnoli, not defendant. The court also concluded that the State had established a conspiracy and allowed the codefendants' statements to stand. After noting that there was no doubt that Michael Huminsky was guilty of all counts of conspiracy and delivery on both dates (although the conspiracy charges could not be sustained since the court found no other codefendants guilty of conspiracy), the court found that the State had failed to prove its case as to defendant Brock except for delivery of a controlled substance on April 20 (case No. 84—7332). Defendant was sentenced to a mandatory term of six years.

On appeal, defendant Brock contends that (1) the trial court erred by consolidating the two indictments against all codefendants, thus considering all of the "other crimes" evidence against defendant; (2) defendant's guilty verdict must be reversed because it was based on inadmissible hearsay (codefendants' statements); and (3) the State failed to prove its case beyond a reasonable doubt. We affirm defendant's delivery conviction for the following reasons.

■ First, we note that the record contains no post-trial motions by defendant Brock. Both an objection at trial and a written post-trial motion are required to preserve an issue for review; thus, absence of a written motion waives that issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176.) However, even had no waiver occurred, we would still

affirm defendant's conviction.

■ Defendant's claim that the trial court erred by consolidating the two indictments against defendant and then considering the evidence relating to both indictments in finding him guilty of one count of the first indictment is without merit for several reasons. There is a presumption that a trial court relied only on proper evidence in reaching its conclusion. (*People v. Berland* (1978), 74 Ill. 2d 286.) Where guilt is manifestly shown, there must be more than a mere suspicion that a trial court considered improper evidence so as to refute the presumption. *People v. Delno* (1966), 35 Ill. 2d 159.

■ In the present case, there is no indication that the court considered evidence concerning case No. 84—7334 in finding defendant guilty of delivery in case No. 84—7332. The court did state, after finding that the State had proved the existence of a conspiracy, that it would consider the evidence in both cases as to each defendant. However, in light of the court's assurance that it would have no difficulty in keeping the cases separate, its additional statement that defendant's conviction in No. 84—7332 was based on the fact that he searched Agent Callahan and then sold drugs to him on April 20, and its finding that the evidence was insufficient to convict defendant in No. 84—7334, it is clear that the court considered only proper evidence in reaching its conclusion.

■ ■ Similarly, defendant's hearsay objections must also fail. It is well settled that coconspirators' statements, made during and in furtherance of a conspiracy, are admissible once a *prima facie* case of conspiracy has been independently established, even when there is no conspiracy indictment. (*People v. Goodman* (1980), 81 Ill. 2d 278.) The *prima facie* case must be established by a preponderance of nonhearsay evidence (*People v. Cortes* (1984), 123 Ill. App. 3d 816) and must show that two or more persons were engaged in a common plan to accomplish a criminal goal or to reach a common end by criminal means (*People v. Pintos* (1988), 172 Ill. App. 3d 1096). Moreover, the existence of the agreement can be inferred from surrounding facts and circumstances. *People v. Katsigiannis* (1988), 171 Ill. App. 3d 1090.

■ Whereas defendants in this case were charged with calculated drug conspiracy, which requires three conspirators (Ill. Rev. Stat. 1983, ch. 56½, par. 1405(b)(2)), there is ample evidence indicating that a simple conspiracy involving two conspirators existed on April 20 when Mike Huminsky and defendant were engaged in a joint venture to sell drugs to Callahan. (See Ill. Rev. Stat. 1983, ch. 38, par. 8—2(a); see also *People v. Pintos* (1988), 172 Ill. App. 3d 1096 (*prima facie*

case of conspiracy shown so as to allow coconspirators' statements even though defendant was found not guilty of calculated criminal drug conspiracy).) The facts of this case sufficiently establish a *prima facie* case so as to allow the use of coconspirators' statements.

■ In any event, it is obvious that the trial court did not rely on the objected-to statements in convicting defendant on the April 20 delivery charge. Rather, it concluded that defendant was guilty on the basis of Callahan's testimony that he met defendant, was searched by defendant, who was armed, and then received cocaine from defendant in exchange for money. Therefore, there was no error. Nor was it error to permit Callahan to respond on cross-examination that he had marked a bag of white powder with the name "Judo" when defense counsel elicited the information and where the testimony concerned the foundation for the chain of custody of evidence. The same reasoning applies to Callahan's testimony regarding the name "Bertagnoli" on the doorbell to the apartment where the April 20 transaction occurred. Such evidence was admissible since it was offered to show investigatory procedure and not offered to show that "Bertagnoli" lived in the apartment.

■ Defendant's final argument is that he was not proved guilty beyond a reasonable doubt. This argument is destitute of substantive merit. The court relied on Callahan's unequivocal identification of defendant as the person who sold cocaine to him. Defense counsel did not cross-examine the agent regarding the identification. It does not matter what name was used to describe defendant—Judo or Brock—since Callahan positively identified him as the cocaine seller. Viewing the evidence in the light most favorable to the prosecution (see *People v. Collins* (1985), 106 Ill. 2d 237), the direct evidence that defendant sold cocaine to Agent Callahan on April 20 is overwhelming, thus negating the need to be buttressed by additional circumstantial evidence (*e.g.*, nonintroduction of business card defendant gave to agent), as urged by defendant.

Accordingly, defendant's conviction for delivery of a controlled substance in No. 84—7332 is affirmed.

Affirmed.

LORENZ and PINCHAM, JJ., concur.