THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES CLARENCE ERNST, Defendant.

Third District   No. 3—90—0505

Opinion filed August 28, 1991.—Rehearing denied October 10, 1991.

Joseph M. Gibson, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Jay Paul Hoffman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant James Ernst was convicted of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(a)(2)) and armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2). Defendant raises the following issues on appeal: (1) that the trial court erred in denying defendant's request for a jury of six persons; (2) that the defendant was not proved guilty beyond a reasonable doubt; (3) that the court erred in refusing to instruct the jury regarding unlawful delivery of a look-alike substance; (4) that the court erred in instructing the jury on accountability; (5) that certain comments by the prosecu-

tor denied the defendant a fair trial; and (6) that the defendant's sentence was excessive. We affirm.

We first address the defendant's contention that the trial court erred in denying his oral motion, made just prior to the selection of the jury, that defendant be allowed to proceed with a jury comprised of 6, rather than 12, jurors. The State objected, and although the court found that defendant was knowingly and voluntarily waiving his right to a 12-member jury, it denied the defendant's motion.

■ The defendant relies primarily on *People ex rel. Daley v. Joyce* (1988), 126 Ill. 2d 209, 533 N.E.2d 873, which held that certain amendments to section 115—1 of the Code of Criminal Procedure of 1963 (the Code) (Ill. Rev. Stat. 1987, ch. 38, par. 115—1) were unconstitutional. These amendments provided that under certain circumstances a defendant could not waive trial by jury unless the State agreed to such a waiver. The court's holding was based upon its interpretation of article I, section 13, of the Illinois Constitution. (Ill. Const. 1970, art. I, §13 ("The right of trial by jury as heretofore enjoyed shall remain inviolate").) The court found that the phrase "as heretofore enjoyed" referred to the common law right to a jury trial as enjoyed at the time of the adoption of the 1970 Constitution. After reviewing the case law involving a defendant's right to waive a jury, the court stated:

> "The dimension of our constitutionally protected right to a trial by jury under the 1870 constitution [when the phrase 'as heretofore enjoyed' was first inserted] is clear *** and clearly encompassed the right of an accused to waive trial by jury. That right, as it was understood and enjoyed by the people of this State *** was adopted and incorporated in our 1970 constitution. Short of a constitutional amendment to that effect, the legislature cannot now deprive an accused in Illinois of any part of that constitutionally protected right." *Joyce*, 126 Ill. 2d at 222, 533 N.E.2d at 879.

The defendant maintains that *Joyce* stands for the proposition that "the mode of trial is completely within the discretion of the [d]efendant, and that the State has no right, nor can one be created for it, to dictate the mode of trial." The State, underscoring the obvious, responds that *Joyce* did not address the issue of whether a defendant has the right to decide the number of jurors. The State also points out that section 115—4(b) of the Code provides that a jury "shall consist of 12 members" (Ill. Rev. Stat. 1989, ch. 38, par. 115—4(b)) and that the use of the term "shall" indicates that this require-

ment is mandatory. However, as the committee comments to that section clearly indicate:

> "Since the defendant may waive his constitutional right to a jury trial he may waive any part of such a right and agree to a trial by a jury of less than twelve members [citation]. There is no intent to lessen or abrogate that right in subsection (b)." Ill. Ann. Stat., ch. 38, par. 115—4(b), Committee Comments, at 21 (Smith-Hurd 1990).

Moreover, although cited by neither the defendant nor the State, our research has revealed a number of cases in which it has been held that a defendant may waive his right to a jury of 12 and proceed with a lesser number of jurors. (See *People v. Pierce* (1938), 369 Ill. 172, 15 N.E.2d 845 (11 jurors); *People v. Scudieri* (1936), 363 Ill. 84, 1 N.E.2d 225 (same); *People v. Bragg* (1988), 176 Ill. App. 3d 1080, 531 N.E.2d 821 (six jurors); *People v. Burries* (1986), 144 Ill. App. 3d 138, 494 N.E.2d 750 (11); *People v. Quinn* (1977), 46 Ill. App. 3d 579, 360 N.E.2d 1221 (six); see also *People v. Mayden* (1979), 71 Ill. App. 3d 442, 389 N.E.2d 901 (11).) None of these cases, however, is dispositive of the question of whether the defendant has the *right*, over the State's objection, to insist on a partial jury waiver.

Although the argument that a defendant's absolute right to waive a trial by jury necessarily includes an absolute right to a partial jury waiver has some superficial attraction, it does not withstand closer analysis. The right to a jury trial guaranteed by the Illinois Constitution is not the right to a jury comprised of 6 or 11 or 3 or 30. It is the right to a trial by jury "as heretofore enjoyed" (Ill. Const. 1970, art. I, §13), which has, since as far back as the tenth century (Ill. Ann. Stat., ch. 38, par. 115—4, Committee Comments, at 21 (Smith-Hurd 1990)), been commonly understood to mean a jury of 12 (see *People v. Kolep* (1963), 29 Ill. 2d 116, 193 N.E.2d 753). While the defendant's ability to waive this right may not be abridged (*Joyce*, 126 Ill. 2d 209, 533 N.E.2d 873), it does not give rise to the power to dictate the number of jurors. Neither the right to a particular form of trial nor the concomitant power to waive that right creates a right to a wholly different form of trial. We hold, therefore, that the trial court did not err in denying defendant's motion for a six-member jury.

In addition, even if we were to find that the trial court erred in denying defendant's motion, we would not reverse the defendant's convictions. Defendant has not explained how he was prejudiced by having a jury of 12, rather than the 6 he requested, act as the trier of fact. A conviction will not be reversed where it does not appear that justice has been denied or that a finding of guilt resulted from an er-

ror. (*People v. Richardson* (1988), 123 Ill. 2d 322, 528 N.E.2d 612.) We conclude that any prejudice suffered by the defendant is purely speculative.

The defendant next contends that he was not proved guilty beyond a reasonable doubt. Bill Merrill, a Fulton County deputy sheriff assigned to the Multi-County Narcotics Enforcement Group (MEG), testified that he and a confidential source, J.C., went to the parking lot of a laundromat in Peoria County on November 28, 1989, to purchase an ounce of cocaine. The defendant got out of his truck and entered Merrill's car. Defendant produced a plastic bag containing a white powdery substance, and Merrill told the defendant that he wanted to test it. The defendant told Merrill that his companion in the truck had a smaller quantity which he could test, but Merrill told defendant that he would test the larger bag. Defendant and J.C. then exited the car while Merrill tested the powder, which gave a "partial positive" reaction for the presence of cocaine. Merrill then got out of his car and spoke briefly with defendant before other police officers arrived and arrested the defendant and his companion, Michael Linwood. Merrill also testified that six days earlier the defendant had sold him an ounce of what was purported to be cocaine but which turned out not to contain any drugs.

Daniel Brotz, a police officer assigned to MEG, testified that he interviewed the defendant after his arrest. According to Brotz, the defendant told him that his companion, Linwood, had instructed the defendant to deliver a bag of cocaine to Merrill.

Jerry Wolland, also assigned to MEG, testified that he searched the defendant's truck and found a loaded pistol underneath the seat on the passenger side. Officer John Bennett also participated in the search, and he found a small bag of suspected cocaine in the bed of the truck. Robert Thompson, a friend of the defendant, testified that the defendant came to his house on November 28 and Thompson gave the defendant a gun.

Charles Schofield, director of MEG, testified that after his arrest the defendant told him that he didn't feel that he was in any trouble because there wasn't any cocaine involved in the deal. Defendant also told Schofield that the sale was Linwood's idea. Defendant admitted that he obtained the gun found in the truck but claimed that he gave it to Linwood and had no control over it.

J.C., the confidential informant, testified that Chuck Barnes, who had previously sold him some cocaine, referred J.C. to the defendant as someone who could supply larger amounts of cocaine. J.C. stated that he called the defendant many times regarding purchasing an

ounce of cocaine and that all of his dealings were with the defendant and not with Linwood. J.C. and Merrill purchased an ounce of white powder from the defendant and Linwood on November 22 for $1,700, which J.C. later learned did not contain cocaine.

Denise Vaughn, a chemist, testified that the bag of powder delivered by the defendant on November 28 contained 28.1 grams of a substance containing cocaine. The substance contained approximately 3% cocaine. The smaller bag found in the defendant's truck contained 0.2 grams of a substance containing cocaine but it was not tested for purity due to the small amount involved.

The defendant testified that he was present when Chuck Barnes sold cocaine to J.C. and that Barnes introduced the defendant to J.C. at that time. Defendant stated that J.C. called him on his beeper and they discussed the price of an ounce of cocaine, but defendant maintained that it was Linwood who set the price and who claimed that he could supply larger amounts of cocaine. According to defendant, he and Linwood mixed together a bag of Bisquick, aspirin, Tylenol, and baking soda which defendant delivered to J.C. and Merrill on November 22. Defendant stated that he received only $25 of the $1,700 which was paid for the ersatz cocaine.

Defendant further testified that J.C. contacted him repeatedly on November 28 seeking more cocaine. Defendant picked up Linwood, who had a bag of white powder which defendant said he presumed was more phony cocaine. They then went to defendant's house to add more Bisquick because the package looked small. Defendant claimed that he did not think there was any cocaine in the bag. Defendant and Linwood then drove to Wayne Thompson's house, which was directly across from the laundromat. Defendant got a gun from Thompson, returned to his truck and gave the gun to Linwood. After Merrill and J.C. arrived, defendant delivered the package and was subsequently arrested. Defendant stated that the small bag of cocaine found in the bed of the truck did not belong to him. Defendant testified that Linwood told him that he had a smaller bag which the buyers could test if they wanted, but defendant did not know what was in the smaller bag. As related earlier, the jury found the defendant guilty of unlawful delivery of a controlled substance and armed violence.

Defendant's reasonable doubt argument is twofold. First, he claims that there was insufficient evidence that he *knowingly* delivered cocaine. Defendant points out that the first delivery of purported cocaine did not contain any drugs and that he testified that he believed that the second delivery similarly involved only harmless substances. He also contends that the small amount of cocaine contained

in the second mixture and his statement after his arrest that he wasn't in trouble because no cocaine was involved in the deal are additional evidence that he had no knowledge of the presence of cocaine. Defendant also maintains that his statement to Officer Brotz that Linwood had told him to deliver the *cocaine* was simply a misstatement.

■ Knowledge in cases such as this is rarely susceptible of direct proof, and it may be proved by evidence of acts, statements, or conduct of the defendant from which an inference of knowledge may be fairly drawn. (*People v. Chicon* (1977), 55 Ill. App. 3d 100, 370 N.E.2d 605.) Although defendant denied knowing about the cocaine and argues that his reference to cocaine was a misstatement, it is the function of the jury to determine the credibility of the witnesses, and they are not required to accept the defendant's exculpatory testimony. (*People v. Morrison* (1988), 178 Ill. App. 3d 76, 532 N.E.2d 1077; *People v. Freeman* (1988), 167 Ill. App. 3d 740, 521 N.E.2d 1191; *Chicon,* 55 Ill. App. 3d 100, 370 N.E.2d 605.) In addition to defendant's reference to cocaine, Officer Merrill testified that he asked the defendant to leave Merrill's car while he tested the substance the defendant had delivered to him. Since defendant left the car and remained nearby, the jury could have reasonably drawn the inference that the defendant was confident that the substance that he delivered would test positive for the presence of cocaine. After viewing the evidence in the light most favorable to the prosecution (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267), we believe that there was sufficient evidence for the jury to find that the defendant was aware that he was delivering cocaine.

■ Second, defendant contends that he was not "armed" with a pistol because he had given it to Linwood and defendant was not near it when he delivered the cocaine. Defendant's argument, however, misapprehends the basis of his armed violence conviction. As stated in the indictment, the predicate felony for the armed violence charge was not the *delivery* of the cocaine, but was instead the *possession* of cocaine while armed with a weapon. The evidence clearly showed that defendant procured the gun and gave it to Linwood while they waited in defendant's truck for Merrill and J.C. to arrive. Linwood was then in possession of both the large and small bags of cocaine. Based on the evidence, the jury could properly find the defendant guilty of armed violence on a theory of accountability. A person is legally accountable for the acts of another if he elicits, aids, abets, agrees, or attempts to aid another in the planning or commission of an offense, before or during the commission of the offense, with the concurrent specific intent to promote or facilitate the commission of that offense.

(*People v. Harris* (1990), 198 Ill. App. 3d 1002, 536 N.E.2d 709.) The evidence was more than sufficient to support a finding that the defendant aided Linwood in committing armed violence by providing him with a loaded pistol while knowing that he was in possession of cocaine.

■■ Defendant next contends that the trial court erred in refusing to give a proposed jury instruction regarding the "lesser included offense" of unlawful delivery of a look-alike substance. Although a defendant is entitled to appropriate jury instructions which present his theory of the case when such theories are supported by the evidence, instructions which inject unnecessary issues into a case are properly refused. (*People v. Hoyt* (1989), 180 Ill. App. 3d 863, 536 N.E.2d 472.) A look-alike substance is by definition a substance "*other than a controlled substance.*" (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 56½, par. 1102(y).) Both the package delivered to Merrill by the defendant and the smaller package found in the defendant's truck contained cocaine. Therefore, to instruct the jury that they could find the defendant guilty of delivery of a look-alike substance would have been contrary to the evidence and confusing to the jury. We find no error.

■■ ■ Defendant next maintains that the trial court erred by instructing the jury regarding accountability. We have already found that the jury could properly find the defendant guilty of armed violence on the basis of accountability. With respect to the unlawful delivery charge, although the evidence suggests that defendant acted as a principal, there was also evidence that he and Linwood planned and executed the delivery together. Evidence which shows that the defendant acted as a principal and also assisted another in committing an offense authorizes giving instructions based on both principal and accountability theories. (*People v. Faysom* (1985), 131 Ill. App. 3d 517, 475 N.E.2d 945.) Moreover, any possible error in giving an unsupported accountability instruction is harmless where the evidence is sufficient to prove defendant's guilt as a principal. *Morrison*, 178 Ill. App. 3d 76, 532 N.E.2d 1077.

Defendant next argues that references by the prosecutor in closing arguments to Chuck Barnes, the person who introduced the defendant and J.C., as a drug dealer denied the defendant a fair trial. The defendant did not object to these comments and thereby failed to preserve them for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; *People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579.) Defendant also contends that J.C. should not have been allowed to testify that Barnes had sold him drugs. Although the defendant ob-

jected, no grounds for the objection were specified. Following a discussion off the record, the trial court allowed the testimony, stating:

> "Just to make clear, although there's been no formal objection at this time, there should be additional foundation on this as to time, place, that type of thing."

Based on the court's comment, it appears that defendant withdrew his objection, and therefore any alleged error has been waived.

■ In any event, we discern no significant prejudice to defendant from either J.C.'s testimony or the prosecutor's comments. The defendant himself testified under direct examination that he was introduced to J.C. by Barnes when Barnes sold J.C. some cocaine. The prosecution was entitled to argue that Barnes was a drug dealer on the basis of this evidence alone. (*Collins*, 106 Ill. 2d 237, 478 N.E.2d 267 (prosecution is entitled to argue any logical inference that can be drawn from the evidence).) We find no error.

■ Finally, defendant maintains that the sentences imposed are excessive and should be reduced. Defendant was sentenced to 12 years' imprisonment for unlawful delivery of a controlled substance and received a concurrent 10-year term for armed violence. Defendant contends that the trial court ignored several mitigating factors, including the fact that his conduct was induced or facilitated by Linwood (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.1(a)(5)) and that imprisonment would entail excessive hardship to his wife and two children (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.1(a)(11)).

The trial court is charged with the task of fashioning a sentence which strikes the appropriate balance between the protection of society and rehabilitation of the defendant (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541), and that determination will not be disturbed absent an abuse of discretion (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882). The court is not obligated to recite and assign value to each factor presented at a sentencing hearing. (*People v. Plantinga* (1985), 132 Ill. App. 3d 512, 477 N.E.2d 1299; *People v. Baker* (1983), 114 Ill. App. 3d 803, 448 N.E.2d 631.) It is presumed that the court considered any mitigating evidence absent some indication, other than the sentence itself, to the contrary. (*People v. Sawyer* (1985), 139 Ill. App. 3d 383, 487 N.E.2d 662, *aff'd* (1986), 115 Ill. 2d 184, 503 N.E.2d 331.) It is clear from the court's comments that it weighed and considered both the mitigating and aggravating factors, and we will not substitute our judgment for that of the trial court. *Cox*, 82 Ill. 2d at 280, 412 N.E.2d at 547.

■ The defendant also contends that the court erred in considering the presence of a weapon as an aggravating factor in imposing

sentence for unlawful delivery of a controlled substance. A sentencing court may, of course, consider as a factor in aggravation that the defendant's conduct caused or threatened serious harm (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a)(1)), and the trial court was clearly concerned with the potentially dangerous situation created when defendant obtained a gun shortly before the drug deal was to occur. Defendant argues, however, that sentencing the defendant for armed violence and then using the presence of a weapon as an aggravating factor in the separate conviction for unlawful delivery "amounts to penalizing the [defendant] twice for the same offense." We disagree.

We must again emphasize that the defendant was convicted of two separate offenses. The armed violence conviction was based on the *possession* of cocaine while armed with a gun. The court expressly did not consider the presence of a weapon as an aggravating factor for that offense because it recognized that "the legislature took that into account by making that a Class X felony." The court did, however, find that the defendant's conduct in procuring a firearm created an "explosive situation" threatening serious harm and the court found that to be an aggravating factor in the *delivery* of the cocaine. The defendant has not, as he suggests, been punished twice for the same offense, but was instead sentenced for separate acts. (See *People v. Green* (1990), 199 Ill. App. 3d 927, 557 N.E.2d 939.) We find no error, nor do we find any abuse of discretion by the trial court.

For the reasons stated above, we affirm the judgment and sentence of the the circuit court.

Affirmed.

BARRY and HAASE, JJ., concur.