(No. 36681.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* PHILIP KOLEP, Appellant.

*Opinion filed Sept. 27, 1963.—Rehearing denied Nov. 25, 1963.*

PRENTICE H. MARSHALL, of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER KISSANE and WILLIAM J. MARTIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

A joint indictment against the defendant, Philip Kolep, and James Bracken, Dennis Doherty, LeRoy Buick, Eugene Avery, Roy McGovern and Donald Coglan, was returned in the criminal court of Cook County charging the murder of Roseann Beckman. The defendant, Kolep, who was tried jointly with Avery, McGovern, Coglan and Bracken before the same jury, was found guilty and sentenced to 14 years in the penitentiary. For a reversal of the lower court judgment he urges that (1) the proof against him was insufficient, (2) the denial of the petition

for change of venue was error, (3) the admission of certain photographs into evidence was error, (4) the giving of a certain instruction was erroneous and (5) permitting the jury to fix the punishment was unconstitutional and erroneous.

On the night of June 21, 1960, McGovern and Mrs. Beckman arrived at Joe's Tavern at the corner of 37th Street and Wallace Avenue in Chicago. The defendant had already been there, drinking with some friends of his —a married couple. Mrs. Beckman drank there and danced with McGovern and Coglan. Later the defendant joined Coglan at the bar. Shortly before 2:00 o'clock in the morning someone suggested going to another tavern and, upon being invited to accompany them, Kolep joined the group. He, Coglan, McGovern, Avery and Mrs. Beckman then left the tavern in McGovern's car. On the way to the other tavern, McGovern side-swiped another car, left the scene of the accident and drove to the corner of 43rd and Parnell, where Kolep resided. Just before reaching Kolep's house, McGovern passed another car in which Bracken, Doherty and Buick were riding. This car followed McGovern to the street in front of Kolep's home. While McGovern's car was stopped Mrs. Beckman got out and began walking west along 43rd Place. Coglan and McGovern followed her, while Kolep got into the other car. Both Coglan and McGovern struck Mrs. Beckman; she fell to the sidewalk and struck her head. The second car then drove up, with the defendant in it. Someone picked Mrs. Beckman up and placed her in the back seat. Buick, Bracken and Doherty were in the front seat while Kolep, Coglan, McGovern, Avery and Mrs. Beckman were in the back seat. This car was driven another one-half block into an alley where one of the group had intercourse with her. When someone turned to defendant and asked if he "wanted some," he stated that he got disgusted and went home. When someone expressed the opinion that Mrs.

Beckman was dead, McGovern, Coglan and Avery ran while Bracken, Buick and Doherty took Mrs. Beckman to a desolate area near a railroad track, dumped her body on the ground and fled. After Kolep's departure, Coglan took Mrs. Beckman's rings, which were later recovered. Her body was found where it had been left and was there photographed by members of the police department.

Defendant contends the proof merely reveals he was an innocent spectator and the proof was insufficient to show he was an accessory before the fact. The written statements and the oral admissions of defendant and the respective co-defendants had various portions deleted for evidentiary purposes and the admitted portions were limited to the person making the statement or those in his presence when the same was made. It clearly appears from the evidence that the woman was not conscious when the intercourse took place in the car. Prior to the men leaving the tavern there is proof as to conversations between certain of them as to their intentions to have intercourse with the woman. The defendant left the tavern with the woman, Avery, McGovern and Coglan. These three men had discussed having intercourse with her. Later when the second car drove along side the McGovern car, one of the occupants asked who the girl was—at the time she was walking away from McGovern's car. McGovern stated that he told the men in the other car that they could "have" her if they wanted. The accused called to someone in the other car, left the McGovern car and got into the second car. He was in this second car when it pulled up to where Coglan, McGovern and Mrs. Beckman were walking. He saw them hit her, was in the back seat where she was placed after being picked up from the sidewalk, remained in the car when all the other men were in it, remained in the car when it was driven to the alley and while the intercourse took place, making no objection. In an oral admission he stated that he had seen one of the men have intercourse

with the unconscious body of Mrs. Beckman. In a later written statement he stated that he did not know if Mrs. Beckman was sexually molested.

In *People* v. *Smith,* 391 Ill. 172, we held that an innocent spectator is not criminally responsible because he happens to see another person commit a crime, but if the proof shows that a person is present at the commission of a crime without disapproving or opposing it, it is competent for the jury to consider this conduct in connection with other circumstances and thereby reach the conclusion that he assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the same. In the absence of explanation, such conduct is not consistent with that of an innocent person similarly situated, and is sufficient to support an inference that a common understanding or design existed. Mere presence or negative acquiesence is not enough to constitute a person a principal, but circumstances may show there is a common design to do an unlawful act to which all assent. (See, *People* v. *Thicksten,* 14 Ill.2d 132.) Although it is generally true that the proof tending to show one to be an accessory before the fact would be of events occurring before the inflicting of the fatal blow, evidence of subsequent acts is nonetheless competent to prove participation in a criminal assault. *People* v. *Cione,* 293 Ill. 321.

After a thorough examination of the evidence in this record it is difficult to assess the conduct of the defendant other than that of participating in a common understanding and design to have sexual relations with Mrs. Beckman against her will. No other reasonable explanation can be advanced for the striking her, knocking her to the ground and thereafter having intercourse with her. The fact that they may not have intended to bring about her death cannot relieve them of their legal responsibility. The killing of a human being, even though involuntary, constitutes the crime

of murder if it occurs during the commission of an unlawful act which in its consequences naturally tends to destroy human life, or is committed in the prosecution of a felonious intent. (Ill. Rev. Stat. 1959, chap 38, par. 363.) In standing by, aiding, abetting or assisting in the perpetration of a crime, the accused was an accessory before the fact and punishable as a principal. (Ill. Rev. Stat. 1959, chap. 38, par. 582.) If the group with which the accused associated himself had a common design to rape Roseann Beckman, then whatever act any one of the group did in furtherance of the original design is the act of all and all are equally guilty of the murder that inadvertently occurred while they perpetrated the rape. *People* v. *Rudecki*, 309 Ill. 125.

As to the defendant's contention concerning the alleged error of the trial court in denying his petition for a change of venue, the State asserts that such right was waived by the defendant. It is provided in section 26 of the Venue Act (Ill. Rev. Stat. 1961, chap. 146, par. 26), that: "In any case in which there is more than one defendant, any defendant or defendants desiring a change of venue shall give reasonable notice of the application to the other defendant or defendants * * *. Upon the presentation of the application for a change of venue the court shall require each such other defendant or defendants to state whether there is any judge, or any two judges, whom he believes to be prejudiced against him, and if any such defendant or defendants state that he believes any judge or any two judges to be prejudiced against him, the court shall continue the cause for not more than one day in order to enable such defendant or defendants to file an application for change of venue in accordance with the provisions of this Act. If any defendant or defendants, after being notified of an intended application for change of venue by some other defendant or defendants, shall at the time of such application fail to disclose that he believes any

judge or any two judges to be prejudiced against him or them, such defendant or defendants shall thereafter be barred from applying for a change of venue * * *."

On July 19 the case was assigned for trial to Judge Drucker, who ordered the case set for trial on October 3. On September 16 Bracken moved for a severance on the ground that Coglan had made statements indicating Bracken had intercourse with Roseann Beckman. When the People informed that they would not use any portion of Coglan's statement involving Bracken, Judge Drucker denied Bracken's motion for severance. On September 29 Kolep's attorney received notice from Buick's attorney that he would file a motion for a change of venue from Judge Drucker on October 3. Buick also named Judge Canel as prejudiced against him. On October 3 Judge Drucker ruled that Buick's motion would be held on the call for 24 hours. On October 3, Kolep's attorney informed that he did not join in Buick's change of venue and that he was ready for trial that morning. Avery's attorney made the same statement. The court informed them that it would have to wait until the venue matters were disposed of the following morning. On the following day four of the seven defendants joined in Buick's petition for a change of venue. Bracken named two judges—Drucker (the judge before whom the case was pending) and Judge Holmgren. Coglan named Judge Drucker and Judge Hasten. McGovern named Judge Slater and Judge Salter. Doherty named Judge Covelli and Judge Canel. Concerning Doherty's petition, Judge Drucker remarked that, since it did not name him, Doherty's case could be heard by Judge Drucker. Doherty's attorney then replied that the practice had been, to his knowledge, that if there was no severance of multiple defendants, the co-defendants not initiating the change of venue could name two additional judges without naming the judge before whom the case was pending. Judge Drucker replied that the State could sever the defendants if it so wished. It is

understood by this remark that the judge meant if the State did not wish to separate the case he could not hear it, since certain of the defendants did claim he was prejudiced against them in their petitions. Here defendant points out that the Venue Act requires each multiple defendant to name the judge before whom the case is pending in his affidavit of prejudice. Buick, Bracken and Coglan had named Judge Drucker (before whom the case was then pending) as being prejudiced against them; Judge Drucker was then required by law to grant the change of venue. The four remaining defendants could not go to trial before Judge Drucker unless the State agreed to sever their cases. When Bracken and Buick sought to withdraw their petitions Judge Drucker sustained all the motions for change of venue and did not consider the motions for the withdrawal. In effect, the presiding judge had granted the motions which had named him and also the motions which had not named him as being prejudiced against a particular defendant. At this point in the proceedings Kolep's attorney had knowledge that the judge was granting motions concerning prejudice alleged as to judges other than the judge before whom the case was pending. He did not present a motion for change of venue then naming two other judges as being prejudiced against the defendant. He assigns as his reasons for failure to do so his understanding and interpretation of the Venue Act, being that the affidavit must name the presiding judge to whom the petition is addressed. The defendant intimates that he can force a severance of this case by this type of technique— the failure to join in a petition for change of venue by asserting that he cannot swear that the presiding judge is prejudiced against him where co-defendants have made such a petition and affidavit asking for a change of venue.

Defendant contends he was excused from joining in a petition before Judge Drucker because the two judges he feared were prejudiced against him, namely Judge Covelli

and Judge Salter were named in the petitions of Doherty and McGovern. Doherty was granted a severance. It was Doherty's petition that named Judge Covelli, the judge who presided at this trial. On October 4, 1960, all the defendants and their attorneys appeared before the chief justice of the criminal court, Judge Richard B. Austin. The various attorneys informed concerning the status of the change of venue matter. Then one of the attorneys informed the chief justice that the defendants Kolep and Avery were answering ready for trial and waived any change of venue. No objection was made to this remark by either the defendant Kolep or his attorney. The case of Doherty was then severed and the six remaining defendants were sent to Judge Covelli for trial. On October 7, 1960, Kolep's attorney for the first time presented a petition for a change of venue naming Judges Covelli and Salter. Under the provisions of the Venue Act, it is our opinion that the defendant clearly waived his rights by the conduct heretofore set out.

Over the defendant's objection, the trial court admitted into evidence photographs of Mrs. Beckman as she was found and also photographs of her at the morgue. Defendant claims that this was reversible error in that these photographs were so gruesome and inflammatory that any probative value they might have had was far outweighed by the prejudicial effect upon the jury their admission caused. The trial judge, in overruling defendant's objections, noted that the photographs did show the condition of the victim's clothing and certain bruises on her body, and ruled that they were admissible for the purpose of showing the amount of force that had been used. While the question is a close one, we can not say that this ruling constituted an abuse of discretion.

Over defendant's objection the jury was instructed that "All who take part in a conspiracy after it is formed and while it is in execution, and all who, with knowledge

of the facts, concur in the plans originally formed, and aid in executing them, are fellow conspirators. Their concurrence, without proof of an agreement to concur, is conclusive against them. They commit the offense when they become partners to the transaction or further the original plan." In defendant's view, this instruction is objectionable because it permitted the jury to convict him if they found he was a participant in an original plan to have intercourse with Mrs. Beckman, although he withdrew from that plan before McGovern and Coglan struck her. He complains of its charging him with responsibility for the consequences that ensued because of his original attachment to the group which may have combined and agreed to have relations with Mrs. Beckman. A fair appraisal of the instruction, as considered with the series of all instructions tendered to the jury, leads us to the conclusion that it was appropriate under the facts in the instant case. Instruction No. 25, to which no objection had been made by the defendant, informed the jury that if they were satisfied beyond a reasonable doubt that the defendants had entered into a conspiracy to commit rape and that some act or acts were performed by one or more of the defendants toward the consummation of the conspiracy, and that in pursuance of the common design, one of the defendants while in the act of prosecuting the rape, killed the deceased, then all persons engaged in such conspiracy are guilty of murder. Another instruction referred to a combination to rape the deceased. Our examination of the instructions reveal that the jury was fully and fairly informed in this case. It is sufficient if the series of instructions, considered as a whole, fully and fairly announce the law applicable to the respective theories of the People and the defense. *People* v. *Cavaness,* 21 Ill.2d 46.

At the time of the trial section 1 of the Sentence and Parole Act was in effect, (Ill. Rev. Stat. 1959, chap. 38, par. 801,) which then permitted the jury to fix the punishment

in murder and certain other felony cases. It is urged by defendant that this statute was violative of section 5 of article II of the Illinois constitution. This constitutional provision guarantees to every person charged with crime the right to trial by jury as "heretofore enjoyed". Under the common law in force at the time of the adoption of the Illinois constitution the judge and not the jury fixed the sentence in criminal cases. The particular issue however is whether permitting the jury to fix the penalty in such cases is a deprivation of a defendant's guaranteed constitutional right of trial by jury. As early as 1725 the jury fixed punishment under the common law. Many of the States of this country have shifted the power of imposing sentences in criminal cases from the judge to the jury and then back to the judge. Under the present Illinois Criminal Code this power is now with the trial judge and not the jury. For a proper interpretation of the jury-trial guarantee we have examined many State and Federal cases. In essence this guarantee insures to a defendant in a criminal case (1) the right to have the facts in controversy determined by 12 impartial jurors (2) that the trial be conducted in the presence and under the direction and superintendence of a judge and (3) that the verdict be unanimous. (See, *Sinopoli* v. *Chicago Railways Co.* 316 Ill. 609; *Commonwealth* v. *Loftus,* 292 Pa. 395, 141 Atl. 289; *Lindsey* v. *United States,* (D.C. cir.) 133 F.2d 368; *Patton* v. *United States,* 281 U.S. 276, 74 L. ed. 854.) We are of the opinion that the constitutional guarantee of trial by jury in criminal cases does not preclude the jury's power to fix the punishment.

From a careful consideration of the various contentions of the defendant and the record in this case it is our opinion that no prejudicial error was committed in the lower court. The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*