# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Williams*, 2013 IL App (4th) 110936

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL WILLIAMS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0936 |
| Filed | April 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for child abduction was reversed and the cause was remanded for a new trial on the ground that the trial court responded to a question from the deliberating jury by improperly giving an instruction on the uncharged offense of distributing harmful materials to a minor, since the evidence was not overwhelming, the instruction presented a new theory that defendant showed the minor pornography in order to lure him into his car, and, absent the instruction, the jury would not have known that it could make the inference that defendant's attempt to lure the minor into his vehicle was for an unlawful purpose. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 10-CF-1221; the Hon. James E. Souk, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on Appeal

Michael J. Pelletier, Karen Munoz, and Amber Corrigan, all of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and John E. Teefey, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Appleton and Turner concurred in the judgment and opinion.

## OPINION

¶ 1      Following a June 2011 trial, a jury convicted defendant, Michael Williams, of one count of child abduction (720 ILCS 5/10-5(b)(10) (West 2010)). In July 2011, defendant filed a motion for judgment of acquittal or, in the alternative, motion for a new trial, asserting the trial court erred in giving its own jury instruction in response to a question posed by the jury during deliberations. In August 2011, the court denied defendant's motion and sentenced him to an extended term of five years' imprisonment. Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 2      Defendant appeals, arguing the trial court committed reversible error by giving its own instruction to the jury after deliberations began. We agree and reverse and remand with directions.

¶ 3      I. BACKGROUND

¶ 4      In December 2010, the State charged defendant by information with two counts of child abduction (720 ILCS 5/10-5(b)(10) (West 2010)) for attempting to lure a child under the age of 16 into his vehicle for an unlawful purpose on two separate occasions. Count I alleged defendant attempted to lure T.F. into his vehicle for an unlawful purpose on or about December 15, 2010, and count II alleged defendant attempted to lure K.S. into his vehicle for an unlawful purpose on or about December 18, 2010.

¶ 5      A. Trial Testimony

¶ 6      At defendant's June 2011 jury trial, T.F., who was 14 years old at the time of the incident, testified he was walking to school on December 15, 2010, when a man in a white, four-door car pulled up next to him and called him over to the vehicle. T.F. approached the vehicle on the passenger side, at which time the man showed him a pair of shoes ("Jordans") and asked him if he wanted to buy them. As T.F. was speaking to the man, out of the corner

of his eye he noticed pornography playing on a laptop in the vehicle, which T.F. described as a female performing oral sex on a male. The laptop was "at an angle" and "[s]lanted toward the passenger's window." T.F. told the man he did not have any money to buy the shoes and the man said, "cool" and drove off; however the man turned around and pulled back up alongside T.F. and asked him if he wanted a ride. T.F. told him "no" and kept walking. T.F. was unable to identify defendant as the man in the white car, but he did identify the shoes seized from defendant's residence as those the man asked him to buy and recalled the man was wearing a hat. T.F. further testified at the time of the incident, rumors about a "guy" in a white car driving around the area were going around his school.

¶ 7    T.F.'s mother, Bernice, testified she did not give defendant or anyone else permission to give T.F. a ride.

¶ 8    K.S., who was also 14 years old at the time of the incident, testified he was riding his bicycle around 10:30 or 11 p.m. on December 18, 2010, when he noticed a white four-door Buick following him. K.S. started riding faster and the car "zoomed off" but then returned shortly after and pulled up next to him at which time K.S. was on the driver's side. K.S. stated the man in the car asked him if he needed a ride home and told him he could "just throw the bike in the trunk." K.S. was unable to see the driver's face due to a glare from a computer screen. K.S. testified the computer was "sitting like in the middle" facing the driver and had a "porno on it." When asked to describe specifically what he saw on the computer screen, K.S. responded "a girl having sex *** in a bed." K.S. declined a ride and "rode off fast." K.S. further testified he saw the same car the next school day.

¶ 9    K.S.'s grandmother, Sandra, testified K.S. lived with her in December 2010 and she did not give defendant or anyone else permission to give K.S. a ride.

¶ 10   Bloomington police detective Michael Burns testified in December 2010 he had received information regarding attempts by an individual to get kids into a car. After receiving this information, Burns interviewed the individuals making the allegations, including T.F. and K.S. K.S. told him he saw the white car, which had some damage "behind the left headlight," approach T.F. The information received from these interviews and the resulting investigation ultimately led Burns to defendant.

¶ 11   Burns interviewed defendant regarding his involvement in the allegations. This interview was audio- and video-recorded. An edited version of the interview was played and published to the jury as People's exhibit No. 1.

¶ 12   During the interview, defendant admitted he asked a kid (T.F.) by the video store whether he wanted to buy the shoes and whether the kid wanted a ride to school. Defendant also admitted pornography was playing on his laptop as he was talking to the kid, but defendant "doubted" the kid could see the computer screen because it was "half-way down." Defendant admitted he picked up another kid on the same day and "dropped him off right at the corner." He placed the laptop on the floor while the kid was in the car. Defendant denied he was trying to bribe kids with the shoes.

¶ 13   Defendant further denied the incident with K.S., stating he never asked a child with a bicycle if he wanted a ride anywhere. Defendant gave Officer Burns permission to search his residence where a laptop, a box of black Air Jordan tennis shoes, and a black baseball cap

with a "NY emblem on the front" were seized from defendant's bedroom.

¶ 14 Antwaun Lewis, defendant's boyfriend, testified he used defendant's car to drive to work on December 18, 2010. Lewis worked from 5 p.m. to approximately 9 p.m., at which time he drove defendant's car home. Defendant was at the house when Lewis got home. Around 10:20 p.m., Lewis and defendant left in defendant's car to attend a party for Lewis's father. They returned home at approximately 2 a.m. Lewis admitted he had confronted defendant before his arrest after hearing "stuff," but defendant denied he had approached children to sell shoes. Lewis testified defendant had sold a pair of shoes to an adult in early December because he needed the money and stated defendant had one more pair of shoes to sell.

¶ 15 During closing arguments, the State argued it proved defendant intentionally attempted to lure (1) T.F. into his car by asking him if he wanted to buy "a pair of Air Jordan tennis shoes" and (2) K.S. by approaching him at night and saying "let me give you a ride" and "it's cold outside." Additionally, the State asserted defendant's act of "driving around with the porn on his computer" while "trying to pick up young boys" showed defendant was attempting to lure the boys into his car for an unlawful purpose. Defense counsel acknowledged defendant exercised bad judgment by pulling up next to T.F. while playing pornography on his laptop, but argued defendant was not trying to lure T.F. into his vehicle for an unlawful purpose, but was only trying to sell T.F. a pair of shoes. On rebuttal, the State again argued defendant was using the shoes and the pornography as "bait" to get T.F. in his car and the porn as "bait" to get K.S. in his car.

¶ 16 Following closing arguments, the jury was instructed the State must prove the following propositions to sustain a charge of child abduction: (1) the victim was under 16 years of age; (2) defendant intentionally attempted to lure the victim into a motor vehicle; (3) without the consent of the victim's parent or guardian; (4) for an unlawful purpose.

¶ 17 After deliberations began, the jury sent the trial court the following question: "Is providing a minor access to pornographic material an unlawful act in violation of a criminal statute?" When asked for input by the court, both defense counsel and the State originally agreed the jury should be instructed to deliberate on the current charges, noting defendant was not charged with providing a minor access to pornographic material. Following a recess, the State informed the court it had determined the offense of distributing harmful materials to a minor was applicable in defendant's case and asked the court to answer the jury's question affirmatively, but tell the jurors the only charges pending were child abduction. Following a second recess, the court noted the appellate courts have admonished trial courts to answer jury questions when it is possible to do so. The court determined the jury had asked a specific question and, thus, it had the authority to give the jury an instruction defining "other than a lawful purpose" as "a violation of the Criminal Code." Defense counsel objected to the proposed objection, arguing a simple "yes" would be a better response. The court responded a "yes" would not answer the jury's question because a factual discrepancy existed regarding whether defendant knowingly exhibited harmful materials to minors. Further, the court opined the jury would have no way of knowing whether defendant intended to commit a crime "unless they know what the crime is." The court also noted, by providing the jury with its proposed response, the jury would be given the "ability to determine, based on their determination of the facts, as to whether that part of the case, the displaying on the

computer of pornography, was an action by the [d]efendant that was for an unlawful purpose."

¶ 18    Over defense counsel's objection, the jury was given the following instruction by the court:

" 'Other than a lawful purpose' means any unlawful purpose which would be a violation of the Illinois Criminal Code.

A section of the Illinois Criminal Code defines the offense of distributing harmful material to a minor as occurring when a person knowingly sells, lends, distributes, exhibits to, depicts to, or gives away to a minor, knowing that the minor is under the age of 18, or failing to exercise reasonable care in ascertaining the person's true age:

A. Any material which depicts nudity, sexual conduct or sado-masochistic abuse, or which contains explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sado-masochistic abuse, and which, taken as a whole, is harmful to minors; or

B. A motion picture show or other presentation which depicts nudity, sexual conduct, or sado-masochistic abuse and is harmful to minors.

Harmful to minor is defined to mean that quality of any d[e]scriptional representation in whatever form of nudity, sexual conduct, sexual excitement or sado-masochistic abuse, when taken as a whole, it

1. Predominantly appeals to the p[r]urient interest in sex of minors,

2. Is patently offensive to prevailing standards in the adult community in the state as a whole with respect to what is suitable material for minors, and

3. Lacks serious literary, artistic, political or scientific value for minors.

You should continue your deliberation utilizing this instruction in conjunction with all other instructions previously given to you by the Court and render a verdict according to the law and evidence."

¶ 19    The jury found defendant guilty of count I against T.F., but not guilty of count II against K.S. In July 2011, defendant filed a motion for a new trial, asserting the trial court erred in responding to the jury's question in the manner it had, depriving defendant of due process and a fair trial. In August 2011, the court denied defendant's motion for a new trial. The court sentenced defendant to an extended term of five years in prison. Defendant immediately filed a motion to reconsider sentence, which the trial court denied in October 2011. This appeal followed.

¶ 20                                          II. ANALYSIS

¶ 21    Defendant argues the trial court erred by instructing the jury on the uncharged offense of distributing harmful materials to a minor after jury deliberations began. Specifically, defendant asserts this instruction presented the jury with a new theory of the case, *i.e.*, defendant offered T.F. a ride for the unlawful purpose of showing him pornography, which allowed the jury to draw an inference in favor of the prosecution and effectively directed the jury's verdict. As a result, defendant contends his conviction and sentence must be reversed

-5-

and his case remanded for a new trial. The State disagrees, asserting the court had a duty to answer the jury's question and did so appropriately. We agree with defendant.

¶ 22 "The purpose of [a jury] instruction is to guide the jury in its deliberations and to help it reach a proper verdict through the application of legal principles as applied to the evidence and the law." *People v. Hester*, 131 Ill. 2d 91, 98, 544 N.E.2d 797, 801 (1989). A trial court's decision to answer or refrain from answering a jury's question will not be disturbed absent an abuse of discretion. *People v. Brown*, 319 Ill. App. 3d 89, 100, 745 N.E.2d 173, 184 (2001). In general, when a jury asks an explicit question or requests clarification on a point of law arising from facts over which there is doubt or confusion, the trial court has a duty to provide further instruction. *People v. Millsap*, 189 Ill. 2d 155, 160, 724 N.E.2d 942, 945 (2000); *People v. Childs*, 159 Ill. 2d 217, 228-29, 636 N.E.2d 534, 539 (1994). However, a court may refrain from answering a jury question (1) when the previously given instructions sufficiently explain the relevant law, (2) where further instruction would serve no useful purpose or could mislead the jury, (3) when the jury's question is one of fact, or (4) where the court's response would require it to express an opinion that would likely direct the verdict. *Millsap*, 189 Ill. 2d at 161, 724 N.E.2d at 945. Once jury deliberations commence, the court must refrain from submitting new charges or new theories to the jury. *Id.* at 161, 724 N.E.2d at 946. Further, instructions which are not supported by the evidence or the law should not be given. *People v. Mohr*, 228 Ill. 2d 53, 65, 885 N.E.2d 1019, 1026 (2008).

¶ 23 Defendant cites *Millsap* for the proposition a trial court "should not submit new charges or new theories to the jury after the jury commences its deliberations." *Millsap*, 189 Ill. 2d at 165, 724 N.E.2d at 948. In *Millsap*, the defendant was charged with home invasion and robbery. *Id.* at 156, 724 N.E.2d at 943. During his trial, the State did not pursue an accountability theory and did not request the jury be instructed on accountability. After the jury began deliberations, it sent a note to the trial court asking whether "the accomplice [is] just as guilty at [*sic*] the offender who causes an injury in a home invasion?" (Internal quotation marks omitted.) *Id.* at 159, 724 N.E.2d at 945. In response, the court instructed the jury on accountability and Millsap was convicted on both counts. *Id.* at 160, 724 N.E.2d at 945. In reversing the defendant's convictions and remanding for a new trial, the supreme court held the trial court erred in giving the accountability instruction because it deprived the defendant of an opportunity to defend against the new theory not argued by the State. *Id.* at 163-64, 725 N.E.2d at 947. As in *Millsap*, defendant argues he was denied any opportunity to defend against the new theory his unlawful purpose in luring T.F. into his car was to show him pornography.

¶ 24 The State responds *Millsap*'s holding was primarily based on the fact the elements for principal and accomplice liability are different, and as noted by the supreme court, "the elements that the State would have had to prove to establish defendant's guilt as an accomplice are different from those necessary to prove his guilt as a principal." *Id.* at 165, 724 N.E.2d at 948. Here, however, the State contends the trial court's additional instruction did not require the State to prove any additional elements in order for the jury to find defendant guilty of child abduction.

¶ 25 In this case, the jury asked the trial court whether "providing a minor access to pornographic material [is] an unlawful act in violation of a criminal statute." The court was

correct in its assertion a simple "yes" response would not answer the jury's question because it recognized a factual discrepancy existed regarding whether defendant *knowingly* exhibited pornography to the minors. The court further stated as follows:

"The answer to the [jury's] question actually is it could be, but you would have to make an analysis under this [distribution of harmful material to a minor] statute *** [to determine] whether there was a knowing exhibition in his case.

There's a factual discrepancy there. The kids obviously testified they saw it and what they saw.

While Mr. Williams didn't testify, he gave evidence through his interview indicating that he had no intention to knowingly be exhibiting it to minors.

He thought his computer was closed, so [the jury would] have to make that factual determination, and then they have to make a determination based on what the kids' brief–very brief testimony given by the kids as to what they saw, whether that falls within the definition of harmful materials, so it is not an automatic yes based on the facts that are before the Court."

The court further stated, "[the jury has] no way of knowing whether [providing a minor access to pornography is] a crime or not or whether the intention was to commit some crime unless they know what the crime is." Thus, to sufficiently respond to the jury's question, the court determined, in addition to providing a definition for "other than a lawful purpose," it must provide a full instruction on the distribution of harmful material to a minor. The court opined this further instruction would give the jury the "ability to determine, based on its determination of the facts, *** whether *** the displaying on the computer of pornography, was an action by the [d]efendant that was for an unlawful purpose."

¶ 26     The danger in instructing the jury on the distribution of harmful material to a minor–neither a crime the State charged nor a theory it pursued at trial–is the jury actually convicts the defendant of the uncharged crime without the defendant having an opportunity to defend himself against it. The trial court seemed to acknowledge this possibility when it stated, "[the jury] might look at this [instruction] and say, you know, [']hey, we believe the [d]efendant. He didn't mean to [show the pornography to the minor]. It wasn't a knowing act on his part. It was inadvertent.['] " In other words, if defendant (1) did not knowingly (2) show the pornography to the minor, he had no unlawful purpose. Thus, the State's argument this case is distinguishable from *Millsap* on the basis the trial court's instruction did not require the State to prove an additional element to obtain a conviction for child abduction is flawed because the instruction did require the jury to determine whether defendant *knowingly* showed the pornography to the minor. Further, contrary to the State's assertion, defendant did not have an adequate opportunity to defend against a claim he *knowingly* showed the pornography to a minor because this issue did not become crucial to the case until after jury deliberations began.

¶ 27     During defendant's trial, the State never argued defendant's unlawful purpose for luring the minors into his car was to show them pornography. See *People v. Velez*, 2012 IL App (1st) 101325, ¶ 30, 967 N.E.2d 433 ("The required showing *** [of] 'other than a lawful purpose' is essentially a statement of the criminal intent, or *mens rea*. Criminal intent is a

-7-

state of mind that is usually inferred from the surrounding circumstances." (Internal citation marks omitted.)). Instead, the State asserted multiple times the pornography, like the shoes, was part of the lure rather than the reason for the lure. During closing arguments, the State specifically argued the "bait" defendant was using to lure T.F. into his car was the shoes and the pornography and just the pornography in K.S.'s case. While the State asserted the circumstantial evidence in this case would show defendant's unlawful purpose, it never expanded on what the unlawful purpose was nor did the State's argument point to the circumstantial evidence that indicated defendant's unlawful purpose. Further, neither T.F. nor K.S. testified defendant drew their attention to the pornography playing on the laptop. Additionally, although defendant admitted he was playing pornography on his laptop when he was speaking to T.F. about buying the shoes, he did not believe T.F. could see the computer screen because it was angled downward. By giving the instruction on distribution of harmful material to a minor, the trial court introduced a new theory not argued by the State, namely, instead of the pornography being part of the lure as argued by the State during trial, showing the pornography could have been defendant's unlawful purpose.

¶ 28    While neither party brings this to our attention, we recognize in child abduction cases charged under section 10-5(b)(10) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/10-5(b)(10) (West 2010)), a trier of fact *may* draw an inference a defendant acted with an unlawful purpose. Illinois Pattern Jury Instructions, Criminal, No. 8.11A (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 8.11A) provides as follows:

"If you find that the defendant lured or attempted to lure a child under 16 years of age into a motor vehicle, and that he did so without the consent of a parent or lawful custodian of the child, you may infer it was for other than a lawful purpose.

You are never required to make this inference. It is for the jury to determine whether the inference should be made. You should consider all of the evidence in determining whether to make this inference."

In this case, however, the trial court refused this instruction.

¶ 29    In *People v. Woodrum*, 223 Ill. 2d 286, 860 N.E.2d 259 (2006), our supreme court discussed a prior version of the child abduction statute. There, defendant was charged with luring children under the age of 16 into a dwelling without the consent of a parent in violation of section 10-5(b)(10) of the Criminal Code (720 ILCS 5/10-5(b)(10) (West 1998)). The supreme court noted the offense of child abduction is complete upon luring the child with the requisite unlawful purpose. *Woodrum*, 223 Ill. 2d at 307, 860 N.E.2d at 273. The court stated:

"The State is not required to prove that defendant completed his unlawful purpose or intended offense after luring the children inside. The completion or attempted completion of the unlawful purpose would result in a prosecution for a separate offense. Thus, contrary to defendant's argument, the State was not required to prove that a separate crime or attempt occurred inside the residence to sustain the charge of child abduction." *Id.*

¶ 30    At the time of Woodrum's offense, the statute provided luring or attempted luring of a child without the consent of a parent "shall be prima facie evidence of other than a lawful

purpose." 720 ILCS 5/10-5(b)(10) (West 1998). The court found this language created an unconstitutional mandatory presumption that shifted the burden of proof to the defendant. However, the court noted while due process requires the State to prove every element of an offense beyond a reasonable doubt, the State may properly rely on certain *permissive* presumptions or inferences to prove those elements. *Woodrum*, 223 Ill. 2d at 308, 860 N.E.2d at 274. The fact finder is free to accept or reject permissive presumptions or inferences.

¶ 31   Although the giving of a jury instruction is generally within the discretion of the trial court, the instructions given, when " ' "considered as a whole, [must] fully and fairly announce the law applicable to the respective theories of the People and the defense." ' " *People v. Velez*, 2012 IL App (1st) 101325, ¶ 26, 967 N.E.2d 433 (quoting *People v. Terry*, 99 Ill. 2d 508, 516, 460 N.E.2d 746, 750 (1984), quoting *People v. Kolep*, 29 Ill. 2d 116, 125, 193 N.E.2d 753, 758 (1963)). During closing arguments, the State asserted the circumstantial evidence in this case would prove defendant's unlawful purpose. However, without the benefit of IPI Criminal 4th No. 8.11A, the jury was not aware it could infer, if it determined such an inference appropriate based on the evidence, defendant's attempt to lure the minor into his vehicle was for an unlawful purpose. Thus, the instructions given did not fully and fairly announce the law applicable to the State's case. Instead, based on the instruction given by the trial court, the jury convicted defendant based on its determination defendant's unlawful purpose was to distribute harmful material, *i.e.*, pornography, to T.F., neither a crime the State charged nor a theory it pursued during defendant's trial.

¶ 32   Regardless of whether the trial court abused its discretion in giving the harmful distribution instruction, the State asserts any error was harmless. A jury instruction error is harmless where evidence of a defendant's guilt is so clear and convincing that, absent the erroneous instruction, the result would have been the same. *People v. Dennis*, 181 Ill. 2d 87, 95-96, 692 N.E.2d 325, 330 (1998).

¶ 33   In this case, contrary to the State's contention, the evidence against defendant is not overwhelming. T.F. testified a man in a car pulled up next to him as he was walking to school and asked him if he wanted to buy a pair of "Jordans." T.F. observed pornography playing on the man's laptop although the screen was "at an angle." T.F. told the man he did not have money to buy the shoes and the man drove off. Shortly thereafter, the man returned and asked T.F. if he wanted a ride. T.F. responded he did not and continued walking. In his police interview, defendant admitted approaching T.F. to ask him if he wanted to buy the shoes. Defendant also admitted he was playing pornography on his computer as he was driving around, but he did not believe T.F. could see the computer screen because it was "half-way down." Defendant also admitted offering T.F. a ride. However, simply offering a minor a ride is not a crime unless the State can prove an unlawful purpose. Based on this evidence, we cannot say the jury would have found defendant guilty of child abduction absent the trial court's harmful-distribution-to-a-minor instruction. The permissive inference of an unlawful purpose should be made, if at all, by the trier of fact, not this court. Thus, we must reverse defendant's conviction and sentence and remand for a new trial on count I.

¶ 34   In closing, we note on retrial, the trial court should give IPI Criminal 4th No. 8.11A if requested.

## III. CONCLUSION

For the reasons stated, we reverse defendant's conviction and sentence and remand for a new trial on count I.

Reversed and remanded with directions.