NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180332-U

NO. 4-18-0332

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 14, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| TROJANETTE ANGLIN, | ) | No. 17DT71 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mark S. Goodwin, |
| | ) | Judge Presiding. |

_____

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Steigmann and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, concluding (1) the trial court's *voir dire* admonishments did not improperly shift the burden of proof to defendant and (2) the evidence was sufficient to support defendant's conviction beyond a reasonable doubt.

¶ 2        In June 2017, defendant, Trojanette Anglin, received a citation for driving under the influence of alcohol (DUI). In April 2018, a jury found defendant guilty, and the trial court sentenced defendant to 30 days in jail and 24 months of probation.

¶ 3        Defendant appeals, asserting the trial court improperly shifted the burden of proof to defendant when it inquired of the venire, "Do you understand and accept the proposition that the Defendant has a constitutional right not to testify and that no inference of guilt may arise

from the Defendant's failure to testify?" Defendant also asserts the State failed to prove beyond a reasonable doubt that she was in actual physical control of a vehicle. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5          In June 2017, defendant received a citation for DUI (625 ILCS 5/11-501(a)(2) (West 2016)). In July 2017, defendant pleaded not guilty and requested a jury trial.

¶ 6                              A. Defendant's Jury Trial

¶ 7                                    1. *Voir Dire*

¶ 8          On April 25, 2018, defendant's jury trial commenced. The trial court began by addressing prospective jurors as to "some basic principles of law, which apply to all criminal cases." The court admonished the panelists that "the law requires I ask you each individually these four questions, so I'm gonna call off your name for your response beginning with you Mr. Brooks." Thereafter, the court inquired of each prospective juror as follows: (1) "Do you understand and accept the proposition that a Defendant is presumed innocent of the charge against him?" (2) "Do you understand and accept the proposition that before a Defendant can be convicted the State must prove the Defendant guilty beyond a reasonable doubt?" (3) "Do you understand and accept the proposition that the Defendant is not required to offer any evidence on her own behalf?" and (4) "Do you understand and accept the proposition that the Defendant has a constitutional right not to testify and that no inference of guilt may arise from the Defendant's failure to testify?" Each of the prospective jurors indicated they understood and accepted each of the principles.

¶ 9                          2. *The Evidence Presented at Trial*

¶ 10                                a. Officer Olson

¶ 11          Danville police officer Eric Olson testified that on June 24, 2017, he was dispatched to the scene of an accident. Olson arrived at the scene to find a vehicle in the middle of a field. Olson observed ruts throughout the field "as if [the vehicle] had been driving in the field." The vehicle had suffered extensive damage to the front driver's side of the vehicle. Olson testified the vehicle had struck a tree in the field multiple times. Olson found defendant seated in the driver's seat of the vehicle, attempting to start the vehicle. An unidentified man was present at the side of the vehicle attempting to "grab the keys from [defendant]."

¶ 12          Olson attempted to engage defendant in conversation, but she began swearing at Olson and "started to walk off." Olson told defendant to stop multiple times, but she refused. Olson placed defendant in custody. Olson testified defendant had a strong odor of alcohol, slurred speech, and appeared to have urinated on herself. Defendant was too combative to complete field sobriety tests. In a search of the vehicle, police officers discovered an empty vodka bottle.

¶ 13          On cross-examination, Olson acknowledged the empty vodka bottle had not been preserved as evidence. Olson stated he did not interview defendant at the scene. He did not recall defendant telling him the vehicle had been stolen. Olson testified he did not know the status of the engine, but the car was not drivable because the wheel was coming off.

¶ 14                              b. Officer Blew

¶ 15          Danville police officer Joseph Blew testified that on July 24, 2017, he was dispatched to the scene of an accident. When he arrived on the scene, he observed a vehicle that had been driven onto an empty lot and had apparently struck a tree. Blew testified Olson was present at the scene. Olson advised Blew that defendant had been in the vehicle attempting to restart the vehicle. Blew attempted to engage defendant in conversation, but she was

uncooperative and belligerent. Blew related defendant had trouble with her balance and appeared to have urinated on herself. Blew also noted the odor of alcohol on defendant's breath. Defendant refused Blew's request to complete a field sobriety test or a breathalyzer test. She also refused to sign the "Warning to Motorist" Blew read to her. On cross-examination, Blew confirmed he never saw defendant in the vehicle.

¶ 16        After Olson and Blew testified, the state rested. Defendant moved for a directed verdict, which the trial court denied.

¶ 17                             c. Kenneth Morris

¶ 18        Kenneth Morris, defendant's brother, testified defendant was at his house on the morning of July 24, 2017. A friend of Morris's knocked on the door and informed defendant her car "just came down Moore Street—racing down Moore Street." Defendant left to investigate, and Morris found defendant with her car in a field approximately a block from his house. Morris stated he told defendant not to touch anything but defendant wanted to move the car. Police officers arrived approximately 10 minutes later and questioned defendant. Morris testified defendant "was telling them what I just explained and then the next thing you [know] they took her to jail." Morris stated that to his knowledge defendant had not been drinking and had not driven the car.

¶ 19                             d. Defendant

¶ 20        Defendant testified she had gone to her brother's house to give a friend a ride. She stepped inside the house to use the restroom. When she left the house, a person met her on the sidewalk and told her that her car "went racing down the street." Defendant testified she went inside the house to tell her brother what happened and then went to her car. Defendant's car was in the middle of a field about a block from Moore Street. Defendant testified she was "very, very

upset" and "outraged because someone took off in my car." She wanted to start the car and back it up, but her brother arrived and told her not to. When police officers arrived, defendant testified the police officers were not listening to what she was saying, which caused her to be "difficult." Defendant stated she was not offered a field sobriety test and did not attempt to leave the area. She explained her jeans were dark blue on the inside and light blue on the outside and she had not urinated on herself. Defendant stated she was not offered a breathalyzer test and did not receive the Warning to Motorist. Defendant stated she would have been willing to submit to a breathalyzer or blood test if offered.

¶ 21    On cross-examination, defendant testified she turned her car on but it would not move.

¶ 22    On redirect examination, defendant stated she had not been drinking and did not drive her car into the field.

¶ 23                    3. *Jury Instructions*

¶ 24    Following closing arguments, the trial court instructed the jury. The court reiterated that "[t]he State has the burden of proving the guilt of the Defendant beyond a reasonable doubt and this burden remains with the *** State throughout the case. The Defendant is not required to prove her innocence."

¶ 25    In addition, the court instructed the jury by defining "actual physical control," stating: "The phrase 'actual physical control' means that the Defendant was in the vehicle and in a position to exercise control over the vehicle by starting the engine and causing the vehicle to move."

¶ 26                    4. *Jury Verdict*

¶ 27    Following deliberations, the jury found defendant guilty of DUI.

¶ 28                    B. Defendant's Posttrial Motion and Sentencing

¶ 29            Defendant filed a motion for a new trial, arguing, in relevant part, the State failed

to prove her guilty beyond a reasonable doubt and the evidence at trial did not reasonably

support the verdict. The trial court denied defendant's motion.

¶ 30            The trial court sentenced defendant to 30 days in jail and 24 months of probation.

¶ 31            This appeal followed.

¶ 32                                    II. ANALYSIS

¶ 33            On appeal, defendant asserts the trial court improperly shifted the burden of proof

to defendant when it inquired of the venire, "Do you understand and accept the proposition that

the Defendant has a constitutional right not to testify and that no inference of guilt may arise

from the Defendant's failure to testify?" Defendant also asserts the State failed to prove beyond a

reasonable doubt that she was in actual physical control of a vehicle. We address each of these

arguments in turn.

¶ 34                           A. *Voir Dire* Admonishments

¶ 35            Defendant first asserts the trial court committed reversible error during *voir dire*.

According to defendant, the court erred when it inquired of the venire whether they understood

and accepted "the proposition that the Defendant has a constitutional right not to testify and that

no inference of guilt may arise from the Defendant's failure to testify?" Specifically, defendant

argues the court's use of the word "failure" when it inquired of the venire could have caused a

reasonable juror to believe defendant bore the burden of negating guilt by producing evidence or

proving her innocence. Notably, defendant does not challenge the adequacy of the

admonishments under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) but instead

challenges the admonishment as an instruction incorrectly conveying the applicable law. See

*People v. Sebby*, 2017 IL 119445, ¶ 67, 89 N.E.3d 675 ("The trial court's questions about those principles, particularly the defendant's presumption of innocence and the State's burden of proof, constitute preliminary instructions to potential jurors on how they must evaluate the evidence, so a Rule 431(b) violation may affect the verdict."). Defendant acknowledges she failed to raise this issue before the trial court, thus rendering the issue forfeited. See *People v. Kitch*, 239 Ill. 2d 452, 460, 742 N.E.2d 1235, 1240 (2011). However, we may consider a forfeited claim where the defendant demonstrates plain error. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967).

¶ 36        The plain-error rule allows a reviewing court to consider unpreserved claims of error when a clear or obvious error occurred and either (1) the evidence is so closely balanced the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Wilmington*, 2013 IL 112938, ¶ 31, 983 N.E.2d 1015. The burden of persuasion rests with the defendant. *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010). The first step of plain-error review is to determine whether error occurred. *Id.*

¶ 37        "Whether a defendant has been denied due process by a jury instruction depends upon the way in which a reasonable juror could have interpreted the instruction." *People v. Pomykala*, 203 Ill. 2d 198, 208-09, 784 N.E.2d 784, 790-91 (2003). Defendant contends that by referencing defendant's "failure" to testify, a reasonable juror could have interpreted the instruction as meaning defendant bore the burden of negating guilt, even if guilt could not be inferred from the failure to testify. Importantly, we do not review a jury instruction in isolation. Instead, we consider whether the instructions given to the jury " 'considered as a whole, fully and fairly announce the law applicable to the respective theories of the People and the defense.' "

*People v. Terry*, 99 Ill. 2d 508, 516, 460 N.E.2d 746, 750 (1984) (quoting *People v. Kolep*, 29 Ill. 2d 116, 125, 193 N.E.2d 753, 758 (1963)).

¶ 38         In this case, the trial court began *voir dire* by admonishing the venire as follows:

"Under the law a Defendant is presumed to be innocent of the charges against [her]. This presumption remains with the Defendant at every stage of the trial and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the Defendant is guilty.

The State has the burden of proving guilt of the Defendant beyond a reasonable doubt and this burden remain [*sic*] with the State throughout the case.

The Defendant is not required to prove her innocence nor is she required to present any evidence on her own behalf. She may rely upon the presumption of innocence."

The court continued by asking the venire to respond individually to four questions in accordance with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012): (1) "Do you understand and accept the proposition that a Defendant is presumed innocent of the charge against [her]?" (2) "Do you understand and accept the proposition that before a Defendant can be convicted the State must prove the Defendant guilty beyond a reasonable doubt?" (3) "Do you understand and accept the proposition that the Defendant is not required to offer any evidence on her own behalf?" and (4) "[D]o you understand and accept the proposition the Defendant has a constitutional right not to testify and that no inference of guilt may arise from the Defendant's failure to testify?" Further, while giving instructions to the jury immediately prior to deliberations, the trial court reiterated that "[t]he State has the burden of proving the guilt of the Defendant beyond a

reasonable doubt and this burden remains with the *** State throughout the case. The Defendant is not required to prove her innocence."

¶ 39    When we review and consider as a whole the *voir dire* admonishments in this case, we do not find any reasonable juror could have interpreted the trial court's instructions to shift the burden of proof to defendant. Actually, the venire was repeatedly informed without vagueness or ambiguity, that the burden of proof lay with the State. Each juror agreed they understood and accepted the principles detailed in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). We decline to hold that here, using the word "failure" so misinformed a juror that a reasonable juror abandoned the other instructions of the court and understood the burden of proof to shift to defendant. Thus, we find no error in the trial court's *voir dire* admonishments.

¶ 40    Because we have determined the trial court committed no error with respect to its admonishments, we need not undertake any additional scrutiny under plain-error analysis.

¶ 41                           B. Sufficiency of the Evidence

¶ 42    Defendant next argues the State failed to prove beyond a reasonable doubt she was in actual physical control of a vehicle. We disagree.

¶ 43    When considering whether the evidence was sufficient to support a conviction, "our function is not to retry the defendant." *People v. Sutherland*, 223 Ill. 2d 187, 242, 860 N.E.2d 178, 217 (2006). Instead, we determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 406 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, we allow reasonable inferences in favor of the State. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 323 (2011). It is for the finder of fact to determine

the credibility of witnesses, and that finding is entitled to great weight. *People v. Smith*, 185 Ill. 2d 532, 542, 708 N.E.2d 365, 370 (1999). However, the jury's determination is not conclusive, and where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt, we will reverse. *Id.*

¶ 44       To sustain a conviction for DUI, the State must prove (1) defendant drove or was in actual physical control of any vehicle and (2) the defendant was intoxicated. See 625 ILCS 5/11-501(a)(2) (West 2016). We note defendant only challenges the element of actual physical control and makes no claim regarding her alleged intoxication. Therefore, we only address the actual physical control question.

¶ 45       Generally, proof that defendant was in the driver's seat, possessed the ignition key, and had the physical capability of starting the engine and driving or moving the vehicle, establishes actual physical control. *People v. Heimann*, 142 Ill. App. 3d 197, 199, 491 N.E.2d 872, 874 (1986). In this case, the undisputed evidence established an officer found defendant in the driver's seat of the vehicle with the key in the ignition attempting to start the vehicle.

¶ 46       Citing *People v. Johnson*, 43 Ill. App. 3d 428, 356 N.E.2d 1373 (1976), defendant argues that because the car was inoperative at the time the police officers arrived, it was not physically possible for defendant to move the vehicle. In *Johnson*, the reviewing court held that the defendant's vehicle did not meet the definition of a "vehicle" because it had a damaged battery cable that rendered it inoperable. *Johnson*, 43 Ill. App. 3d at 430-31. Since *Johnson*, the legislature has amended the statute, which now provides that a vehicle "shall be considered to be a vehicle until such time it either comes within the definition of a junk vehicle, as defined under [the Illinois Vehicle Code], or a junking certificate is issued for it." 625 ILCS 5/1-217 (West 2016); see also *People v. Cummings*, 176 Ill. App. 3d 293, 297, 530 N.E.2d 672, 675-76 (1988)

(finding the definition of "vehicle" in *Johnson* was superseded by statute). A "junk vehicle" is "a vehicle which has been or is being disassembled, crushed, compressed, flattened, destroyed or otherwise reduced to a state in which it no longer can be returned to an operable state." 625 ILCS 5/1-134.1 (West 2016). In this case, although Olson testified the car was not drivable, this does not cause the vehicle to fit the description of a "junk vehicle," a definition that clearly contemplates something far more irreversible than the state of defendant's vehicle. As it is uncontested defendant possessed the keys to the vehicle and was attempting to start it when police officers arrived, we conclude this evidence is sufficient to show defendant had actual physical control of the vehicle.

¶ 47    When considering the jury's verdict, we look to the evidence and reasonable inferences supported by the evidence, not just what the State argued. Moreover, the jury instructions informed the jury they could find defendant guilty if they determined, beyond a reasonable doubt, that defendant drove or was in actual physical control of the vehicle. Finally, the jury also received an instruction on circumstantial evidence. Defendant's presence at what appeared to be a recent car accident where she occupied the driver's seat—attempting to start the vehicle, strongly inferred she drove the vehicle during the accident. Defendant smelled like alcohol, never mentioned her vehicle being stolen, and refused to cooperate with officers. A reasonable jury could decline to accept defendant's version of events and instead decide defendant wrecked her vehicle while operating the vehicle immediately prior to the accident.

¶ 48    As this evidence was not so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt, we conclude a rational trier of fact could have found defendant guilty of DUI beyond a reasonable doubt. See *Smith*, 185 Ill. 2d at 542. Accordingly, we affirm the judgment of the trial court.

¶ 49                                    III. CONCLUSION

¶ 50            For the reasons stated, we affirm the trial court's judgment.

¶ 51            Affirmed.